UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL P. ANDREWS and JASON MACE,
on behalf of themselves and others
similarly situated,

       Plaintiffs,

 v.                  5:12-CV-551

A.C. ROMAN & ASSOCIATES, INC.; and
ANTHONY C. ROMAN,

       Defendants.

_____

THOMAS J. McAVOY,
Senior United States District Judge

# DECISION & ORDER

## I. INTRODUCTION

Plaintiff Michael P. Andrews commenced this action alleging that Defendants: [1] failed to pay wages and overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., and the New York Labor Law ("NYLL"), N.Y. Labor Law, Art. 19, § 650 et seq.; [2] retaliated against him in violation of the FLSA, 29 U.S.C. § 215(a), and the NYLL, N.Y. Labor Law § 215(2); [3] discriminated against him on account of his sexual orientation and retaliated against him in violation of the New York Human Rights Law ("NYHRL"), N.Y. Ex. L, § 296 ; and [4] were in breach of contract, unjustly enriched, and indebted to him under a theory of quantum meruit. See Compl. dkt. # 1.

Andrews thereafter filed an Amended Complaint in which Jason Mace was added

as a plaintiff. Am. Compl. dkt. # 14. Andrews and Mace assert the same claims under the FLSA and the NYLL as previously asserted, and Andrews reasserts his individual claims of [1] retaliation in violation of 29 U.S.C. §§ 215(a)(3), 216(b); [2] retaliation in violation of N.Y. Labor Law § 215; [3] discrimination based on sexual orientation in violation of N.Y. Exec. Law § 296; and [4] retaliation in violation of N.Y. Exec. Law § 296. Id. In addition, Andrews and Mace seek to proceed "on behalf of themselves and others similarly situated" in collective and class actions on the claims alleging violations of the FLSA and the NYLL. See id.

On September 16, 2012, Defendants filed a motion pursuant to 28 U.S.C. § 1404(a) to change venue to the United States District Court for the Eastern District of New York. See DKT. #29. On September 17, 2012, Plaintiffs filed a motion seeking conditional certification of a collective action pursuant to 29 U.S.C. §216 (b). See DKT. #31. And on November 11, 2012, Plaintiffs filed a motion for equitable tolling of the statue of a limitations under the FLSA. See DKT #41. After an adjournment of the original change of venue motion return date occasioned by Hurricane Sandy, the matter came before the Court on its December 10, 2012 motion calendar. Because the Court finds that transfer of this action to the United States District Court for the Eastern District of New York is warranted, the Court will address only the transfer motion so that the Court that will preside over the action can decide the two related issues raised by Plaintiffs' motions.

## II. BACKGROUND[1]

Plaintiffs Michael P. Andrews and Jason Mace (collectively, "Named Plaintiffs")

---

[1] The Court will recite only those background facts relevant to this Decision and Order.

bring this action against Defendants A.C. Roman & Associates, Inc. ("Romans & Associates") and Anthony C. Roman (collectively, "Defendants"). Roman & Associates employs private investigators, or "Field Investigators," who operate throughout New York State and elsewhere. Andrews and Mace were both employed by Romans & Associates as Field Investigators.

Named Plaintiffs bring the action on behalf of themselves and others similarly situated Field Investigators, asserting that Romans & Associates failed to pay wages and overtime compensation as required by the FLSA and NYLL. See generally Am. Compl. In this regard, Named Plaintiffs allege that Romans & Associates improperly utilized a "fluctuating workweek" method of calculating overtime compensation resulting in Field Investigators receiving a fixed salary for all hours worked in a workweek whatever the number of hours worked, and receiving only one-half times (instead of one and one-half times) their regular rates of pay for overtime hours. See id. Named Plaintiffs also allege that Defendants neither paid Field Investigators for certain work actually performed at their home offices and in the field, nor counted that time for the purpose of determining the total number of hours they worked in a given workweek. See id.

On the FLSA claims, Andrews and Mace seek to represent:

All persons who are, were, or will be employed by Defendant A.C. Roman & Associates, Inc., in the position of "Investigator" or "Field Investigator" at any time between July 19, 2009, and the date of entry of judgment in this action ("FLSA Class").

Am. Compl. ¶ 20. They assert that these other Field Investigators are similarly situated to them

> in almost every relevant respect. That is, they had the same job title and duties, the same hours of work, reported to the same supervisors, and were subject to the

3

same unlawful policies and practices whereby Defendants: (a) purported to pay them a fixed salary for all hours worked in a workweek, whatever their number; (b) did not pay them overtime compensation at one and one-half times their regular rate of pay for hours worked in excess of 40 hours per workweek; and (c) did not pay them for certain hours actually worked or count such hours for the purpose of determining the total number of hours they worked in a given workweek.

Plf. MOL in Supp. of Cond. Cert., p. 2; see Am. Compl. ¶¶ 21-27.

On the NYLL claims, Named Plaintiffs seek to represent:

All persons who are, were, or will be employed by Defendant A.C. Roman & Associates, Inc., in the position of "Investigator" or "Field Investigator" at any time between July 19, 2006, and the date of entry of judgment in this action ("NYLL Class").

Am. Compl. ¶ 28.

With regard to the putative NYLL class, Named Plaintiffs assert that "[u]pon information and belief, there are more than 100 persons who belong to the NYLL Class," and that the "members of the NYLL Class are geographically dispersed throughout New York State and other parts of the country." Id. ¶¶ 33, 34.

Andrews also brings individual claims for retaliation under the FLSA, 29 U.S.C. § 215(a), and the NYLL, N.Y. Labor Law § 215(2), and discrimination based on sexual orientation and unlawful retaliation under the NYHRL. See generally Am. Compl. Andrews alleges that Defendants took adverse actions against him, including termination of his employment and retaliation, because of his sexual orientation and because he lodged complaints about Defendants' alleged unlawful discrimination and pay practices. See id.

Roman & Associates' office is located in Lynbrook, New York. Defendant Anthony C. Roman, who resides In Rockville Center, New York, is the chief executive officer, sole owner, and principal manager of Roman & Associates. Lynbrook and Rockville Center, New York are both located within the Eastern District of New York.

4

Andrews was employed as a Field Investigator from July 10, 2010 until February 15, 2012. See Michael P. Andrews Aff. in Opp'n to Defs.' Motion to Change Venue ("Andrews Aff.") ¶ 6. Andrews resided in Groton, New York from prior to the start of his employment until about August 2011. Id. ¶ 7. From about August 2011 until his termination in February 2012, Andrews resided in Seneca Falls, New York. Id. Since March 15, 2012, Andrews has resided in Auburn, New York. Id. ¶ 8.

Mace is currently employed by Romans & Associates as a Field Investigator and has been so employed since June 2010. See Jason Mace Aff. in Opp'n to Defs' Motion to Change Venue ("Mace Aff.") ¶¶ 6-8. Mace has, for the entirety of his employment with defendants, resided in Binghamton, New York. Id. ¶¶ 9, 15. Groton, Auburn, and Binghamton, New York are located in the Northern District of New York. Seneca Falls, New York is in the Western District of New York.

Andrews and Mace contend that during their employment as Field Investigators, they performed their regular job duties from their home offices, in their vehicles, and at various investigation sites. They further assert:

> The vast majority of Plaintiffs' field assignments were in Upstate New York. Approximately 60% of Plaintiff Andrews's field assignments and approximately 75% of Plaintiff Mace's field assignments were within counties comprising the Northern District of New York. With the exception of a couple of field assignments worked by Plaintiffs Andrews, neither Plaintiff performed work within the Eastern District of New York.

Pl. MOL in Opp'n to Transfer, p. 3.

Andrews and Mace contend that they reported to several different supervisors while employed by Defendants, "but the majority of their field assignments were overseen by a supervisor named Brock Petrie" who resides in Syracuse, New York, and who "performs

5

his job duties for Defendants from an office located within his residence in Syracuse, New York." Id. at p. 4 (citing Andrews Aff. ¶ 18; Mace Aff. ¶ 19).  Plaintiffs assert that "the computing, telephonic, and other technological equipment in Mr. Petrie's office was provided and installed by Defendants."  Id.

> Plaintiffs argue:
>
> Mr. Petrie features prominently in the Amended Complaint and likely will be an important witness in this case. See Andrews Aff. ¶ 20; Mace Aff. ¶ 20.  In or about the Fall of 2010, Mr. Petrie instructed Plaintiff Andrews not to record time for work that was required and actually performed, including work performed from his home office. See Andrews Aff. ¶ 20. Further, Mr. Petrie engaged in discriminatory conduct toward Plaintiff Andrews in connection with a December 19, 2011 counseling memorandum, and was involved in Defendants' retaliation against Plaintiff Andrews for lodging complaints about Defendants' failure to pay wages and overtime compensation. See Andrews Aff. ¶ 20. It appears that all of the above described unlawful conduct of Mr. Petrie occurred within [the Northern District of New York]. See Andrews Aff. ¶ 21; Mace Aff. ¶ 20.

Id. at p. 4.

Andrews and Mace contend that they are individuals of modest means and that "[r]equiring them to litigate this case in the Eastern District of New York, to pay for travel to and from that district, and to pay for food and lodging in connection therewith, would result in significant financial hardship to them. Id. p. 5, (citing Andrews Aff. ¶ 27; Mace Aff. ¶ 25).

Defendants assert that Roman & Associates' only office is in Lynbrook, New York, and that Andrews and Mace were interviewed, hired and trained in this office. See Anthony C. Roman 11/26/12 Aff. ("Roman Aff."), ¶¶ 6-7.  This training was on implementation of Roman & Associates' Fluctuating Workweek Agreement, and Roman & Associates' employment and compensation policies and protocols. Id.

Defendants further contend that all of the decisions and policies that Plaintiffs

6

complain about, including Andrews' allegations concerning discrimination and retaliation, were made at, and implemented from, the Lynbrook office. Id. ¶¶ 8-9. In this regard, Defendants maintain that all Roman & Associates' assignments originate and terminate in the Lynbrook office, and all Field Investigators report to various managers who, in turn, report to and work out of the Lynbrook office. Id. ¶¶ 10-12. As to Petrie, Defendants assert that he "reports to managers located in the Lynbrook office so that all cases he works on are assigned and managed from that office." Def. MOL in Supp. of Trans., p. 2 (citing Roman Aff. ¶ 13). Plaintiffs essentially confirm this point in their memorandum of law in support of certification where they maintain that "Named Plaintiffs and potential opt-in plaintiffs reported to the same rotating group of supervisors and a single Surveillance Case Manager who was based at Defendants' main office in Lynbrook, New York." Pl. MOL in Supp. of Cert., p. 7.

Defendants also assert that Andrews and Mace were not required to maintain home offices in the Northern District, and did not perform tasks in their homes such as reviewing case files and reports, conducting research, or preparing detailed reports. Roaman Aff. ¶¶ 14-15. "Rather, the only activities performed by Plaintiffs in the Northern District are simply the investigations that take place there, which all originate and are overseen by the Lynbrook office." Def. MOL in Supp. of Trans., p. 2 (citing Roman Aff. ¶ 16).

Defendants further assert that

[a]ll of Plaintiffs' activities are monitored by [defendants' database system] Webtrac, including Plaintiffs' cases, tasks, forms, expense information and time tracking. [Roman Aff.] at ¶ 17. The Webtrac system is maintained and monitored in the Lynbrook office by Lynbrook employees. Id. at ¶ 18. Similarly, all of Roman & Associates' personnel-related records, including

7

policy handbooks and payroll records, crucial to this matter, are monitored and maintained in the Lynbrook office. Id. at ¶ 19. Crucially, all of the witnesses who will testify to the foregoing live in, or within an hour's drive to, the Eastern District. Id. at 120.

Similarly, all of the supposed discriminatory and retaliatory conduct alleged by Andrews arose out of the Lynbrook office, including the alleged December 19, 2011 counseling memo, the meeting concerning Andrews' inflated expense reports and resulting probation and Andrews' termination. Id. at 11 21-22. Indeed, each of the witnesses identified in the Complaint, and who will be called upon to testify as to the alleged discriminatory and retaliatory acts, reside within the Eastern District of New York. Id. at ¶ 23.

Id.

### III. DISCUSSION

### a. Standard

A motion to transfer venue on the grounds of inconvenience to the parties and witnesses is governed by 28 U.S.C. § 1404(a). This provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).

"When ruling on a motion to transfer, a district court first considers whether the action might have been brought in the district to which the movant seeks to transfer it, and next considers whether the transfer promotes convenience and justice." McKinley v. Continental Airlines, Inc., 2007 WL 2462671, at *1 (E.D.N.Y. Aug. 29, 2007)(citation and quotation marks omitted). There is no dispute that the action could have been brought in the Eastern District of New York based on Defendants' residence there. See 28 U.S.C. § 1391(b)(1), (2) and (d). Thus, the Court proceeds to determine whether transfer of this case to the Eastern District of New York promotes convenience and justice.

"The undisputed goal of Section 1404(a) 'is to prevent waste of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" Sherman Street Assocs. LLC v. JTH Tax, Inc., 2004 WL 2377227, at *2 (D. Conn. Sept. 30, 2004)(quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)). In considering whether transfer would promote convenience and justice, district courts have "broad discretion," and consider transfer requests "on a case-by-case basis." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006). Courts often weigh the following factors in exercising this discretion: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of the parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties. Id., at 106-07. "There is no strict formula for the application of these factors, and no single factor is determinative." Farrior v. George Weston Bakeries Distribution, Inc., 2009 WL 113774, at *3 (E.D.N.Y. Jan. 15, 2009). Rather, "[a] balance of these factors will identify the more appropriate forum." Employers Ins. of Wausau v. Fox Entertainment Group, Inc., 522 F.3d 271, 275 (2d Cir. 2008). The party seeking transfer bears the burden of demonstrating that transfer is warranted, and the burden is often described as a heavy one. See Lipton v. The Nature Co., 781 F. Supp. 1032, 1036 (S.D.N.Y. 1992) (denying transfer based on standard that "[t]he moving party bears the heavy burden of demonstrating the desirability of transfer"); Pellegrino v. Stratton Corp., 679 F. Supp. 1164, 1167 (N.D.N.Y. 1988) (McCurn, J.) (denying transfer after considering "whether defendant has met its heavy burden of proof justifying a

9

transfer").

### b. Analysis

#### (1) Plaintiffs' Choice of Forum

"Although a plaintiff's choice of forum is usually accorded greater importance than the other factors, this element diminishes when the facts of the case reveal few meaningful connections to the plaintiff's chosen forum." Ramos De Almeida v. Powell, 2002 WL 31834457, at *4 (S.D.N.Y. Dec. 16, 2002); see Farrior, 2009 WL 113774, at *3 ("[T]he weight given to this factor is diminished where the operative facts have little or no connection with the forum chosen by the plaintiff . . . .")(citations and quotation marks omitted). Despite disagreement regarding the nature of the work performed by Named Plaintiffs in the Northern District of New York, there is no dispute that: the employer's center of operation is in the Eastern District of New York; the Named Plaintiffs were hired and trained at this main office; the policies, practices, and decisions that are at the center of both the wage and discrimination claims emanated from this center of operation; wages were calculated and paid from the Eastern District of New York; a portion of the two Named Plaintiffs' work was performed outside the Northern District of New York; and the Named Plaintiffs' supervisors reported to and were overseen by personnel located in the Eastern District of New York. See Discussion at part (a)(5)(The Locus of Operative Facts), *infra*.

Further, courts have held that a plaintiff's choice of forum is given less weight in the transfer analysis where a plaintiff seeks to bring an action on behalf of himself and a putative class. See In re Warrick v. GE Co., 70 F.3d 736, 741 n.7 (2d Cir. 1995); Ahmed

10

v. T.J. Maxx Corp., 777 F. Supp.2d 445, 450 (E.D.N.Y 2011). If the matter is certified as a collective FLSA action and/or deemed a NYLL class action, the wage claims will implicate many Field Investigators who worked outside of the Northern District of New York,[2] and will involve several managers and policy making employees who work in the Lynbrook office. Thus, even though a plaintiff's choice of forum in an FLSA collective action is entitled to greater weight than in a Rule 23 class action, both types of claims are asserted here.

Because the possibility exists that the matter could be deemed a NYLL class action and/or certified as a a FLSA collective action, both of which will undoubtedly involve class plaintiffs and/or opt-in plaintiffs from outside the Northern District, and because all claims will implicate the decisions of Roman & Associates personnel operating from the Lynbrook office, the Court finds that the connections to the Eastern District of New York outweigh the connections to the Northern District. Thus, this factor tips in favor of transfer to the Eastern District.

### (2) Convenience of Witnesses

"Turning to convenience of the witnesses, it is said that this is probably the single-most important factor in the analysis of whether transfer should be granted." Plastic Suppliers, Inc. v. Cenveo, Inc., 2011 WL 196887, at *4 (N.D.N.Y. Jan. 20, 2011)(interior citations and quotation marks omitted); see Farrior, 2009 WL 113774, at *4 ("In deciding whether to disturb the plaintiff's choice of forum, the convenience of the witnesses is

---

[2]Defendants asserts that "of the two (2) individuals who already signed consents to become party plaintiffs, upon information and belief, one (1) is a resident of Queens County, within the Eastern District of New York." Def. Rply MOL, p. 9 (citing Roman Aff., ¶ 29).

11

generally the most important factor in the transfer analysis."). While the convenience of non-party witnesses is accorded more weight than that of party witnesses, Pilevesky v. SunTrust Bank, 2010 U.S. Dist. LEXIS 124308, at *8 (E.D.N.Y. Nov. 22, 2010), neither the number of witnesses nor the fact that a witness is a party, a party-employee, or a non-party are controlling factors in this analysis. Berman v. Informix Corp., 30 F. Supp.2d 653,657 (S.D.N.Y. 1998). Rather, "[t]he core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses. Courts routinely transfer cases when the principal events occurred, and the principal witnesses are located, in another district." Viacom Int'l, Inc. v. Melvin Simon Prods., Inc., 774 F. Supp. 858, 868 (S.D.N.Y.1991).

Named Plaintiffs identify themselves and Petrie as witnesses who would find the Northern District of New York more convenient. By contrast, defendants have identified eight (8) witnesses from the Eastern District who will purportedly testify to facts relevant to this action, five (5) of whom are identified in the Amended Complaint. Defendants have also identified two (2) other witnesses who live close to the Eastern District and/or regularly work in the Eastern District who will offer testimony in this matter. See Def. MOL in Supp. Trans., pp. 4-6.[3] All of the identified witnesses are either parties or party-

---

[3]Defendants assert:

This is a wage dispute suit alleging that, as a matter of policy, Defendants miscalculated the pay of an entire class of employees and consequently witnesses of central relevance, senior and management level employees with policy-making and implementing authority are located in the Eastern District.

As noted, substantial aspects of Roman & Associates' compensation policies and practices, including those relating to overtime and the Fluctuating Workweek Agreement, were formulated by individuals at Defendants' Lynbrook offices.

Specifically, Anthony C. Roman; Adrienne Lasaponara, Roman & Associates In-House Counsel;

12

employees.

The center of gravity of the litigation, the location where the principal events occurred, and the place where the overwhelming number of witnesses are located is in the Eastern District of New York. Plaintiffs' offer to conduct depositions of Defendants' witnesses in or near Lynbrook, New York does not alleviate the inconvenience these witness will experience if the case is tried in the Northern District. The convenience of the majority of witnesses tips the balance decidedly in favor of transfer to the Eastern District of New York.

### (3) Location of Relevant Documents and Relative Ease of Access to Sources of Proof

Although the location of relevant documents may be of less significance in light of modern copying and reproduction technologies, it nonetheless retains some relevance to

---

Kamil Podlinski, Roman & Associates Vice President of Operations; and Mark Levine, Roman & Associates Vice President, will testify to the foregoing, among other matters. See Affirmation of Stephanie J. Kaufinan, dated November 29,2012 (the "Kaufinan Aff."), ¶ 8.

Questions concerning Plaintiffs' daily activities, including work to be performed in the field during the set hours of an investigation, will also be answered by Lynbrook employees. Andres Gonzalez, Roman & Associates Director of Special Investigations; and John Malkiewicz; Robeli Pesce; and Eddie Chandrapong, Surveillance Managers, will testify concerning, among other things, Plaintiffs' day-to-day activities and how said activities are to be compensated. Id. at ¶ 9.

Doug Rose, Roman & Associates IT Manager, will testify regarding the uploading of materials to Webtrac and the relative ease it can be accomplished-- a crucial issue in this case relating to overtime compensation. Similarly, Mike Hammond, Head of Roman & Associates IT Department, will testify that Plaintiffs do not and should not need to maintain "home offices" as alleged by Plaintiffs. Id. at ¶ 10.

Finally, Gail Gross, Head of Roman & Associates Accounting Department, will explain the payments to Plaintiffs, as well as Roman & Associates' policies concerning the payment of expenses and other sums to employees, a crucial issue in this matter. Id. at ¶ 11.

Eight (8) of these ten (10) witnesses live within the Eastern District of New York. Rose lives within one (1) hour's drive of the Eastern District and Chandrapong is in the Eastern District three (3) times a week when he works in the Lynbrook office. Id. ¶ 12.

13

the venue inquiry. Price v. Stossel, 2008 WL 2434137 at *5 (S.D.N.Y. June 4, 2008). Most of the documents relating to Roman & Associates' compensation policies and procedures were formulated, drafted, and signed by Roman & Associates' personnel in its Lynbrook office. Defendants contend that "[w]hile many of the relevant documents in this case are available electronically, these documents will be relatively easier to access in the Eastern District of New York than the Northern District. Originals of every document at issue in this case are in Roman & Associates' Lynbrook office, including the voluminous employment and payroll files of the company." Defs. Reply MOL, p. 8.

In light of modern copying and reproduction technologies, and the possibility of offering certified copies of business records at trial, the Court finds that this factor is neutral, tipping in favor of neither District.

### (4) Convenience of the Parties

The Court must also consider the convenience to the parties. Based on Named Plaintiffs' residences in the Northern District, this action is more convenient for them in this district. Based on the location of Roman & Associates office, this action is more convenient for Defendants in the Eastern District. "[T]he Court recognizes that where transfer would merely shift the inconvenience from one party to the other, the Court should leave plaintiff's choice of venue undisturbed." Farrior, 2009 WL 113774, at *4 (interior quotation marks and citations omitted). However, because of the potential disruption of Roman & Associates' business posed by the number of employee-witnesses that would be called upon to testify at trial, this factor weighs slightly in favor of transfer to the Eastern District. When combined with the diminished deference afforded Plaintiffs' choice of forum if the matter is certified as a collective action or deemed a class action, the Court

14

finds that this factor weighs in favor of transfer.

### (5) The Locus of Operative Facts

The locus of operative facts favors transfer to the Eastern District of New York. On the wage claims, the company-wide decisions by Roman & Associates concerning its compensation policies and procedures, including overtime pay, were made and implemented by personnel at Roman & Associates' Lynbrook office. See e.g. Pl. MOL in Opp'n to Transfer, p. 19.[4] Other than Named Plaintiffs' performance of some of their job duties in the Northern District, the majority of the relevant events on the wages claims occurred in the Eastern District. This conclusion is even more compelling if the action is deemed a collective or class action.[5] While Andrews and Mace may have resided and worked in the Northern District such to make it the proper venue for *individual* FLSA claims, the same cannot be said for collective and/or class claims.

Moreover, Andrews' alleged discrimination and retaliation claims arose out of decisions made at, and implemented from, the Lynbrook office. This includes the supposed disciplinary phone calls, counseling memos, and the January 2012 meeting in which Andrews was put on probation for inflated expense reports. Further, the telephone call during which Andrews was terminated originated from the Lynbrook office. While Petrie may have been involved in implementing the employer's compensation policies,

---

[4]("While Plaintiffs do not dispute that some of the underlying events took place in the Eastern District of New York, and that the unlawful pay policies described in the Amended Complaint likely were developed there, it is utterly disingenuous to suggest that this District has no connection to the operative facts.")

[5]Named Plaintiffs' argument in support of certifying this matter as a collective action (i.e. that all Field Investigators were similarly situated to Named Plaintiffs with regard compensation by the employer) runs counter to their argument that the locus of operative facts on the wage claims was in the Northern District (i.e. because Andrews and Mace worked there a majority of the time).

15

and in the alleged discrimination and retaliation by way of being the individual who implemented the employer's decisions,[6] the decisions at issue arose from the Eastern District. While the alleged discrimination did have an effect in the Northern District inasmuch as this was where Andrews was located when it was perpetrated, a consideration of the overall events that are central this litigation (especially if certified as a collective action or deemed a class action) occurred in the Eastern District of New York. Thus, the Court finds that this factor weighs in favor of transfer.

### (6) The Availability of Process to Compel the Attendance of Unwilling Witnesses

There is no indication that any non-party witnesses would refuse to appear and, thus, this factor is neutral.

### (7) The Relative Means of the Parties.

"Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." 800–Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp. 128, 135 (S.D.N.Y.1994). However, "[a] party arguing for or against a transfer because of inadequate means must offer documentation to show that transfer (or lack thereof) would be unduly burdensome to his finances." Federman Assocs. v. Paradigm Medical Indus., Inc.,1997 WL 811539, at *4 (S.D.N.Y. Apr. 8, 1997) (citations omitted); see also Orb Factory, Ltd. v. Design Science Toys, Ltd., 6 F.Supp.2d 203, 210

---

[6]Plaintiffs assert that Petrie instructed Andrews not to record time for work that was required and actually performed, engaged in discriminatory conduct toward Andrews in connection with a December 19, 2011 counseling memorandum, and was involved in Defendants' retaliation against Andrews for lodging complaints about Defendants' failure to pay wages and overtime compensation. Pl. MOL in Opp'n to Transfer, pp. 4, 9 (citing Andrews Aff. ¶¶ 20-21; Mace Aff. ¶ 20; Am. Compl. ¶¶ 94, 127, 134-142, 154).

16

(S.D.N.Y.1998) ("[W]here proof of such disparity is not adequately provided, or does not exist, this is not a significant factor to be considered.") (citation omitted).

Named Plaintiffs assert that they are individuals of modest means and that "[r]equiring them to litigate this case in the Eastern District of New York, to pay for travel to and from that district, and to pay for food and lodging in connection therewith, would result in significant financial hardship to them. Pl. MOL in Opp'n to Transfer, p. 5 (citing Andrews Aff. ¶ 27; Mace Aff. ¶ 25).

Defendants counter:

> Andrews notes that he has been unable to find steady, full-time employment since his termination from Roman & Associates. However, upon information and belief, since August 2012, Andrews has operated his own competing business, see Roman Aff., ¶ 31, and from at least May 2012 - August 2012 he worked as an investigator for Discreet Claims Investigations. Id. at ¶ 32. Mace has continuously been employed by Roman & Associates since his hire in June 2010. Id. at ¶ 33.

Defs. Reply MOL, p. 10.

Without a hearing to determine the relative financial abilities of the parties, and because neither side has provided evidence supporting their arguments related to financial means, the Court finds this factor to be neutral.

### c. Conclusion

In considering the above-referenced factors, and taking in account Section 1404(a)'s goal of preventing waste of time, energy and money, and protecting litigants, witnesses and the public against unnecessary inconvenience and expense, the Court finds that Defendants have met their heavy burden of demonstrating that transfer to the Eastern District of New York is warranted. The policies and decisions underlying all of the claims asserted, and those that are sought to be asserted, had their genesis and

implementation in the Eastern District; the majority of the identified witnesses are located in the Eastern District; and trial of this case in the Northern District, while more convenient for the two Named Plaintiffs, would be inconvenient for the Defendants and most of the witnesses.

## IV. CONCLUSION

Therefore, Defendants' motion to transfer venue to the United States District Court for the Eastern District of New York [DKT. #29] is **GRANTED**. The matter is **TRANSFERRED** to the United States District Court for the Eastern District of New York. The Court offers no opinion on the other motions filed in this matter.

**IT IS SO ORDERED**

**Dated:** December 20, 2012

_____
Thomas J. McAvoy
Senior, U.S. District Judge